768 So.2d 1198 (2000)
Rosalind NIMS, Appellant,
v.
Joey HARRISON, Appellee.
Rosalind Nims, Appellant,
v.
John George Papagiannis, Appellee.
Nos. 1D99-3045, 1D99-3048.
District Court of Appeal of Florida, First District.
September 21, 2000.
*1199 Fred H. Flowers, Tallahassee, for Appellant.
R. Frank Myers of Messer, Caparello & Self, P.A., Tallahassee, for Appellee Joey Harrison.
Harold R. Mardenborough, Jr. of McFarlain, Wiley, Cassedy & Jones, P.A., Tallahassee, for Appellee John George Papagiannis
LAWRENCE, J.
We sua sponte consolidate the above cases on appeal involving identical issues. Rosalind Nims (Nims) appeals the dismissal, with prejudice, of her respective second amended complaints against Joey Harrison (Harrison) and John George Papagiannis (Papagiannis), alleging intentional infliction of mental distress. We reverse.
Nims, a teacher at Leon High School, alleges that Harrison and Papagiannis, on May 19-20, 1998, while Leon High School students about to graduate, participated in the planning, editing, writing, printing, copying, and distribution of a newsletter/publication appropriately entitled the "Low Life." Of the several elements which make up a cause of action for intentional infliction of mental distress, only one is at issue on appeal, to-wit: whether the conduct alleged is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency.
We agree with the trial judge that the law in this area is rather unsettled in Florida. He found the offensive language to be outrageous, but concluded that it did not meet the high standard set by appellate case law. We agree that the standard is high, but do not find it so high as to preclude a cause of action based upon the offensive language alleged to have been published in these cases.[1]
Our court long has recognized a cause of action for intentional infliction of mental distress.[2]Ford Motor Credit Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA 1979) (affirming a jury verdict for intentional infliction of mental distress, reversing the verdict under a statute found to be inapplicable across state boundaries, and affirming the verdict without the necessity for remand because the outrageous facts of the case fully supported the verdict). Our court explained:
Ford Motor Credit Company appeals jury verdicts awarding Sheehan compensatory and punitive damages on one count of a complaint charging intentional infliction of mental distress and a second count alleging a violation of Section 559.72(7), Florida Statutes (1975).[FN1]
FN1. Which prohibits anyone, while collecting consumer claims, to engage willfully in conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.
On October 28, 1974, Sheehan purchased a Ford automobile which was financed by Ford Credit pursuant to the terms of a retail installment contract. Later, Sheehan moved to various locations and became delinquent on his account. Ford Credit was unable to locate Sheehan and assigned the account to a central recovery office maintained by it in Michigan. On May 1, 1975, Sheehan's mother, who lived in Coventry, Rhode *1200 Island, received a telephone call from a woman who identified herself as being employed by Mercy Hospital in San Francisco, California. She was advised that one or both of Sheehan's children had been involved in a serious automobile accident and that the caller was attempting to locate Sheehan. The mother supplied information to the caller concerning his home and business addresses and phone numbers located in Jacksonville, Florida.
Sheehan testified that on May 1, 1975, he returned a call to his mother's home in Rhode Island, spoke to his sister, and as a result of information received in that telephone conversation, placed calls during a seven-hour period to hospitals and police departments in San Francisco, California until he finally discovered the information was false. The following day, Sheehan's automobile was repossessed by Search International, an independent contractor with Ford Credit.
The jury awarded Sheehan $4,000 compensatory damages and $11,000 punitive damages. As to that count charging a violation of Section 559.72(7), we conclude the statute has no application since it cannot regulate actions of individuals in Michigan or Rhode Island.[FN2]
FN2. The parties agree that the call from the unidentified person representing she was employed by a hospital in San Francisco in fact emanated from Ford Credit's office in Dearborn, Michigan.
We affirm the verdict assessing damages as to that count alleging intentional infliction of mental distress. The majority rule recognizes the tort of severe emotional distress intentionally caused by a defendant. Section 46(1) of the Restatement states the rule in the following manner:
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
. . . .
We conclude that there is in Florida no bar to an independent action for intentional infliction of severe mental distress when the conduct alleged is "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency. ..." As stated, Ford Motor Credit's conduct falls within that description.
Id. at 957-58, 960 (citations omitted) (emphasis added).
The Florida Supreme Court, as well, holds that the tort of intentional infliction of mental distress exists in Florida. Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278 (Fla.1985) ("We approve the Fourth District's decision insofar as it states that Florida recognizes the tort of intentional infliction of emotional distress.") (reversing a mental distress verdict for deceased's husband, despite that the wife's death was linked to the denial of insurance benefits, where the insurer by contract had a right to contest coverage).
The Florida Supreme Court moreover tells us: "[T]he recognition of torts for intentional interference is certainly not a novel legal concept in Florida common law. For example, this Court has recognized the tort of intentional infliction of emotional distress. See Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278 (Fla.1985)." Stone v. Wall, 734 So.2d 1038, 1044 (Fla.1999) (emphasis added) (answering a question certified by the Eleventh Circuit Court of Appeals and holding that a cause of action exists for intentional interference with the parent-child relationship by a third-party nonparent). The high court explains why, in a case of first impression, it adopted the tort of intentional interference with a parental relationship:

It is our responsibility to adapt the common law to accommodate principles of justice, reason and common sense. We find that present day conceptions of right and justice compel us to join the overwhelming majority of jurisdictions *1201 that have, through decisional law, recognized this common law tort.
Id. at 1047 (emphasis added).
Justice, reason and common sense compel a remedy for the revilement inflicted upon the teacher in the instant case, provided that the facts alleged are proven. McCarson. The conduct alleged is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency; it is utterly intolerable in a civilized community. Sheehan; McCarson. This is particularly true where children and family members who have nothing to do with the relationship between a plaintiff and the tortfeasors are threatened with harm. Sheehan.
The order below, in dismissing Nims' complaint, states the view that while the conduct alleged in the complaint indeed is intolerable in a civilized community, nevertheless certain cases act as a bar to recovery in the instant case. The order cites Ford v. Rowland, 562 So.2d 731, 733-34 (Fla. 5th DCA 1990) (holding that a count for intentional infliction of mental distress failed, despite that the former Port Authority Deputy Director wrote an "ode" about a candidate for port commissioner, including the references "hooker" and "bimbo"); Cape Pubs., Inc. v. Bridges, 423 So.2d 426, 427 (Fla. 5th DCA 1982) (holding that, since plaintiff was an actor in an event of public interest, her claim of intentional infliction of mental distress was not actionable, despite a photo of her clad only in a towel after a police rescued her from her murderous husband; the court noted that the exposure in the photo was similar to "what can be seen on the beaches"); Ponton v. Scarfone, 468 So.2d 1009, 1010 (Fla. 2d DCA 1985) (holding that "Scarfone's utterances, designed to induce [plaintiff] to join with him in a sexual liaison," did not constitute intentional infliction of mental distress); and Kent v. Harrison, 467 So.2d 1114, 1114 (Fla. 2d DCA 1985) (a "several months continued campaign of telephonic harassment in the aftermath of a verbal conflict" in a parking lot did not make out a cause of action for intentional infliction of emotional distress). These cases are distinguishable from the instant case in that none involved threats by the defendant to kill the plaintiff, and to rape the plaintiffs children; none of the cited cases allege facts so outrageous as the facts alleged in the instant case.
The order below also cites Lay v. Roux Labs., Inc., 379 So.2d 451, 452 (Fla. 1st DCA 1980) (dismissing an intentional mental distress complaint where Roux "began to threaten [Lay] with the loss of her job [and used] racial epithets and called the plaintiff a `nigger'" in a dispute over a parking space), and Vance v. Southern Bell Tel. & Tel. Co., 983 F.2d 1573 (11th Cir.1993) (holding that, under Florida law, the employer was not liable for intentional infliction of emotional distress, despite various acts of racial harassment, including hanging a rope "noose" over her work station shortly after she started work), as most similar to the instant facts, noting that recovery was not permitted in these cases. Similar, yes; as outrageous, no.
We conclude as a matter of law that Nims' complaints state a cause of action for intentional infliction of mental distress. We thus reverse the orders below, and remand with instructions to reinstate Nims' second amended complaints.
ERVIN and BROWNING, JJ., CONCUR.
NOTES
[1] The following is only that portion of the published language alleged to have described appellant Nims:

"MOST FUCKED UP TEACHER (AND OTHER PEOPLE WHO ARE JUST FUCKED UP)"
"MRS. NIMS FOR BEING A STUPID BITCH ASS BITCH WHO HAS BLACK SKIN AND IS A FUCKING GIGABOO SO FUCK YOU, YOU STUPID ASS BITCH I WILL KILL YOU YOU FUCKING WHORE ASS FAGET MAGGOT BURGER I WILL RAPE YOU AND ALL OF YOUR CHILDREN AND COUSINS YOU STUPID MOTHER FUCKING BITCH DIE NIGGER."
[2] The terms "mental distress" and "emotional distress" appear to be used interchangeably in judicial opinions and scholarly writings. We discern no difference in the terms.