[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12534

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 10, 2012
JOHN LEY
CLERK

D.C. Docket No. 6:10-cv-01887-MSS-KRS

LORENZO LOPEZ,
an individual,

                                                            Plaintiff - Appellant,

versus

TARGET CORPORATION,
a foreign profit corporation

                                                            Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 10, 2012)

Before TJOFLAT, MARCUS, and SILER,* Circuit Judges.

MARCUS, Circuit Judge:

_____

    * Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Lorenzo Lopez appeals from the district court's order dismissing his complaint against Target Corporation ("Target") and Virginia Winn. Lopez, a Hispanic male, alleged that Winn, a white Target cashier, refused to serve Lopez based on his race and publicly humiliated him when she turned him away from her register. Lopez brought suit against Winn for intentional infliction of emotional distress ("IIED"); against Target for vicarious liability and for negligent training, supervision, and retention; and against both defendants for violating his right to make contracts under 42 U.S.C. § 1981. The district court dismissed the case, explaining that Lopez could not maintain a § 1981 claim because he was ultimately able to complete his purchase, and that Winn's alleged actions did not rise to the level of outrageousness required to state an IIED claim under controlling Florida law. After thorough review and having had the benefit of oral argument, we agree and accordingly affirm the judgment of the district court.

I.

Lopez's complaint alleges the following essential facts. On May 21, 2008, Lopez, a Hispanic male, went to a Target store in Orlando, Florida. Lopez selected some items for purchase and proceeded to a check-out line. The cashier

at that register was Winn,[1] a white female. Lopez waited about five minutes to reach the front of the line, but when he got there Winn stated that her register was closed. When Lopez hesitated to leave the line, Winn "again told him in a very rude tone of voice that her register was closed." Lopez left the register, and Winn proceeded to serve the next customer in line. As Lopez walked away, Winn "was laughing and gesturing toward Mr. Lopez to the customers standing in line." There were no other Hispanic customers in Winn's line.

Lopez, "upset and humiliated," headed toward another check-out line, but he was stopped by a supervisor, who told him that Winn would accept payment for his purchases and that he should go back to her line. Lopez returned to Winn's check-out line and waited again. But when Lopez reached the front of the line, Winn "said in a very loud voice, 'Don't you listen? I'm closed!'" Lopez informed Winn that the supervisor had told him that Winn's register was open. Winn responded, "rudely and even louder[,] . . . 'Don't you understand? I'm closed to YOU!'" Lopez left the register, as Winn again "gestured toward Mr. Lopez and laughed." Lopez proceeded to a different register, where he was able to purchase his items. He told the cashier what had happened at Winn's register, and she

---

[1] Winn's name was misspelled as "Win" throughout the initial complaint. Lopez later filed an amended complaint to fix this error.

called for a supervisor. The supervisor "apologized profusely" to Lopez and gave him store coupons totaling $9. Lopez left the store, but he was "still in a state of shock" and "very distraught."

On November 19, 2010, Lopez filed a five-count complaint against Winn and Target in Florida state court. The complaint asserted the following claims: intentional infliction of emotional distress against Winn (count I); vicarious liability against Target (count II); negligent training, supervision, and retention against Target (count III); violation of 42 U.S.C. § 1981 against Winn (count IV); and violation of § 1981 against Target (count V). On December 14, 2010, Target filed a motion to dismiss counts II, III, and V of the complaint. Target then removed the case to the U.S. District Court for the Middle District of Florida.

The district court issued an order granting Target's motion and dismissing the case in its entirety. The district court determined that Winn's alleged conduct, although reprehensible, was not outrageous enough to maintain an IIED action under Florida law, which "requires a truly extreme level of outrageousness to support an action for intentional infliction of emotional distress in cases of verbal abuse, even when the conduct is motivated by racial animus." Because Lopez had failed to state a claim against Winn for IIED, the district court also determined that Lopez could not sustain his derivative claims against Target for vicarious liability

4

and negligent training, supervision, and retention (counts II and III). The district court also concluded that Lopez failed to state a claim against Target under § 1981 (count V), because Lopez was ultimately able to purchase his items and thus Winn did not "<u>actually</u> thwart [Lopez's] ability to enter into a contract" with Target.[2]

Lopez moved to alter or amend the judgment, which the district court denied. Lopez then timely appealed to this Court.

II.

We review de novo a district court's grant of a motion to dismiss for failure to state a claim. <u>Henderson v. Wash. Nat'l Ins. Co.</u>, 454 F.3d 1278, 1281 (11th Cir. 2006). We must accept all allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff. <u>Id.</u>

Lopez raises two main issues on appeal.[3] First, Lopez argues that the

---

[2] Although Target only moved for dismissal of counts II, III, and V, the district court dismissed the entire case. In considering Target's motion as to the derivative claims in counts II and III, the court concluded that Lopez failed to state an IIED claim against Winn (count I). And, according to the district court, the § 1981 claim against Winn (count IV) also failed, because Lopez never intended to contract with Winn herself, only with Target, and Lopez was ultimately able to complete his transaction. Having found that Lopez failed to state a claim against Winn in either count I or IV, the district court dismissed those counts in addition to the claims against Target, despite Winn's failure to respond to the complaint.

[3] Lopez also raises a third issue on appeal: he argues that he had properly amended his complaint two days before the district court issued its dismissal order, meaning that the order was directed at a complaint that was no longer the operative pleading in the case. Even if, as Lopez asserts, the district court incorrectly concluded that the amended complaint was untimely, Lopez's argument has no merit. The <u>only</u> difference between the two complaints is the spelling of Winn's name. Such a change could have no possible impact on either Target's response to the complaint

district court erred in dismissing his § 1981 claims because Winn's refusal to serve Lopez sufficiently thwarted his § 1981 right to contract, notwithstanding the fact that Lopez was ultimately able to purchase the items he wanted at the prices quoted by the store. Second, Lopez says that the district court applied too high a standard for outrageousness to his state-law intentional infliction of emotional distress claim. We address each issue in turn.

A.

Section 1981 provides in relevant part:

(a) All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . .

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.

The elements of a cause of action under § 1981 are: "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on

---

or the district court's disposition of the case. Thus, any error in striking the amended complaint is clearly harmless. See Fed. R. Civ. P. 61. Moreover, we are hard-pressed to see how requiring the district court to hold off on its dismissal order until Target refiles the same motion to dismiss (now directed at the amended complaint) could be compatible with the requirement to administer the Federal Rules of Civil Procedure in a way that "secure[s] the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." Kinnon v. Arcoub, Gopman & Assocs., Inc., 490 F.3d 886, 891 (11th Cir. 2007) (internal quotation marks omitted) (quoting Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1270 (11th Cir. 2004)). Target does not contest that Lopez adequately alleged the first two elements. The issue before us is whether Winn's alleged discriminatory conduct implicated Lopez's § 1981 right to make and enforce contracts.

In Kinnon, a panel of this Court articulated the controlling standard for § 1981 claims in the retail context. Kinnon, an African-American female, had ordered pizza for a staff meeting, but when the pizza hadn't arrived after more than two hours, she and her coworkers gave up and went out to eat. Id. at 888. The delivery driver eventually arrived but was turned away without payment. Id. The manager of the pizzeria began calling Kinnon repeatedly, threatening Kinnon and leaving angry voicemail messages in which she used obscenities and racial epithets. Id. at 889. Kinnon brought a § 1981 suit against the pizzeria manager. Id. The district court granted summary judgment to the defendant, and this Court affirmed. Id. at 889, 894.

We explained that only the third element of Kinnon's § 1981 claim was at issue. Id. at 891. We observed the "scant authority in our circuit applying § 1981

7

to claims brought by customers against commercial establishments," and thus looked to other circuits, finding the Fifth Circuit's reasoning in Arguello v. Conoco, Inc., 330 F.3d 355 (5th Cir. 2003), to be persuasive. Kinnon, 490 F.3d at 891. In the Fifth Circuit case, Arguello, a Hispanic woman, went to a Conoco gas station to buy gas and beer. Arguello, 330 F.3d at 356. The clerk was rude to Arguello. Id. When Arguello attempted to pay with her credit card, the clerk demanded identification, and the clerk initially stated that she would not accept Arguello's out-of-state driver's license. Id. at 356-57. The clerk completed Arguello's transaction, but a confrontation then ensued, with the clerk yelling obscenities and racist comments at Arguello and her family. Id. at 357.

Arguello sued Conoco under § 1981. Id. The district court granted Conoco's motion for judgment as a matter of law, and the Fifth Circuit affirmed. Id. at 357, 362. The Fifth Circuit explained that a viable § 1981 claim in the retail context "must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase." Id. at 358-59 (internal quotation marks and emphasis omitted) (quoting Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 752 (5th Cir. 2001)). The court concluded that "[Arguello's] claim must fail, because she successfully completed the transaction." Id. at 359. Arguello did not allege any discriminatory contract terms -- she paid the same price as any other customer

8

would have paid, and she was ultimately able to use her preferred method of payment. Id. at 361. Although the clerk's conduct was egregious, "it neither prevented the formation of a contract nor altered the substantive terms on which the contract was made," so it could not form the basis for a § 1981 claim. Id.

In Kinnon, this Court relied on Arguello and the Fifth Circuit's conclusion that Arguello could not establish a § 1981 claim because she had "successfully completed her transaction and was not actually denied the ability to engage in any contractual activity." Kinnon, 490 F.3d at 892. We quoted Arguello for the proposition that, "in the retail context, the plaintiff must demonstrate the loss of an actual contract interest." Id. (emphasis added) (internal quotation marks and alteration omitted) (quoting Arguello, 330 F.3d at 358). As we explained, "[s]ection 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process." Id. Kinnon successfully entered into a verbal contract for the pizza delivery, and she introduced no "evidence showing that '[she] was actually denied the ability either to make, perform, enforce, modify, or terminate a contract.'" Id. (alteration in original) (quoting Arguello, 330 F.3d at 359 n.5). Because "Kinnon's exercise of her contractual rights was not 'in some way thwarted,'" Kinnon could not make out the third element of a § 1981 claim. Id. (quoting Arguello, 330 F.3d at 359).

9

Under this controlling precedent, Lopez cannot state a § 1981 claim. Lopez was able to complete his transaction at the same Target store, buying his desired goods at the same price and using the same payment method as any other customer. Cf. Arguello, 330 F.3d at 361. Thus, Lopez was not "actually denied the ability . . . to make, perform, enforce, modify, or terminate a contract" and cannot show "the loss of an actual contract interest." Kinnon, 490 F.3d at 892; see also Arguello, 330 F.3d at 358, 359 n.5.

Lopez argues, however, that Kinnon dealt with discrimination that occurred only after the contract was formed (and terminated), and so reliance on Kinnon to dismiss Lopez's § 1981 claims would be improper. But Kinnon is not so limited. It is true that the pizzeria manager's discriminatory phone calls started only after Kinnon had terminated the contract, and this Court did note that such post-contractual activity cannot form the basis of a § 1981 claim. See Kinnon, 490 F.3d at 892-893. But the holding in Kinnon did not depend on this timing issue. Rather, this Court relied on the fact that Kinnon -- who had successfully made and terminated a contract on the same terms as any other customer -- was not deprived of any contractual right. Kinnon stands for the proposition that a retail customer cannot make out a claim under § 1981 unless the customer was "actually denied the ability to engage in [some] contractual activity" protected by the statute. Id. at

10

892.

Moreover, to the extent that <u>Kinnon</u> is not on all fours with the present case, <u>Arguello</u> is. Again, Arguello alleged that the Conoco clerk was rude, requested identification when she had not made such demands of other customers, and initially refused to accept Arguello's out-of-state license -- all conduct that occurred <u>before</u> Arguello completed her purchase. Nonetheless, the Fifth Circuit concluded that Arguello could not state a claim under § 1981 because she was ultimately able to make her desired purchase, at the same price and using the same payment method as any other customer. Similarly, Lopez ultimately succeeded in purchasing his desired items from Target. The reasoning of <u>Arguello</u>, which this Circuit adopted in <u>Kinnon</u>, is not easy to cast aside.

The only factual difference between this case and <u>Arguello</u> is that Arguello's transaction was completed by the <u>same</u> clerk who initially refused to serve her on equal terms as other customers. Lopez makes much of the fact that Winn twice rejected his offer to contract, forcing him to complete his transaction with a <u>different</u> cashier. But this is not enough to differentiate the cases. Lopez was not attempting to contract with Winn directly. Plainly, he was attempting to

11

contract with Target, and he was successful in that endeavor.[4] We are not faced here with circumstances where a customer was refused service by the retail store, was required to contract on different terms, got frustrated and left the store, or was in any other way denied the right to make, enforce, or terminate a contract. Fundamentally, Lopez's claim boils down to the assertion that he was delayed and mistreated during the process of making his purchase. But this allegation, standing alone, cannot establish a § 1981 claim. As this Court has explained, § 1981 is not a general civility code. Kinnon, 490 F.3d at 892 ("Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process."). Because Lopez was able to make his desired purchase from Target, on the same terms available to any other customer, Winn's discriminatory conduct did not impair Lopez's right to make contracts under § 1981.

## B.

Lopez also argues that the district court erred in dismissing his intentional

---

[4] Indeed, the Seventh Circuit has held that a plaintiff failed to state a § 1981 claim based on a salesperson's refusal to serve him, where a different sales clerk had offered to help the plaintiff complete his transaction; the court reasoned that this offer demonstrated that the store would have contracted with the plaintiff had he not abandoned his efforts to make a purchase. Bagley v. Ameritech Corp., 220 F.3d 518, 521-22 (7th Cir. 2000) ("While we do not fault [the plaintiff] for taking offense at [the salesperson's] conduct . . . her actions cannot be construed as anything more than a refusal to personally wait on [the plaintiff]." (emphasis added)).

infliction of emotional distress claim against Winn (and thus erred in dismissing his derivative claims against Target).  As a federal court assessing a state-law claim, we are bound to look to Florida law to determine whether Lopez's IIED claim was properly dismissed.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Florida has adopted § 46 of the Restatement (Second) of Torts as the appropriate standard for IIED claims.  Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985).  Section 46 states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability."  Restatement (Second) of Torts § 46.  Lopez has adequately alleged that Winn's actions intentionally or recklessly caused him severe emotional distress.  The issue before us is whether Winn's alleged conduct is sufficiently outrageous to state an IIED claim.

> The commentary to § 46 explains that liability for IIED requires that
>
> the conduct [was] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Id. cmt. d.  This standard has been adopted by the Florida Supreme Court.

McCarson, 467 So. 2d at 278-79; see also R.J. v. Humana of Fla., Inc., 652 So. 2d

13

360, 363 n.2 (Fla. 1995). However, the Florida Supreme Court has not further

elaborated on what constitutes outrageous conduct for IIED purposes. We

therefore look to decisions of Florida's district courts of appeal in interpreting

Florida's outrageousness standard. See Pardo v. State, 596 So. 2d 665, 666 (Fla.

1992) (explaining that, in the absence of a contrary decision by the Florida

Supreme Court, the decisions of the district courts of appeal constitute the law of

Florida).

Under Florida law, Lopez has failed to state a claim for IIED. As one

Florida appellate court has noted, "Florida courts have been reluctant to find

claims for intentional infliction of emotional distress based solely on allegations of

verbal abuse." De La Campa v. Grifols Am., Inc., 819 So. 2d 940, 943-44 (Fla. 3d

Dist. Ct. App. 2002) (per curiam). Indeed, Florida courts have rejected IIED

claims based on allegations of conduct far worse than that alleged by Lopez.

Thus, for example, in Williams v. Worldwide Flight Servs. Inc., 877 So. 2d 869

(Fla. 3d Dist. Ct. App. 2004) (per curiam), the plaintiff alleged that his manager

and other supervisors called him racially derogatory terms, both to his face and to

other employees. Id. at 870. The manager also repeatedly threatened to fire

Williams, told another employee to create false disciplinary actions against

Williams, made Williams work in dangerous conditions, and took away Williams'

14

breaks.  Id.  The trial court dismissed the complaint, and the district court of appeal confirmed.  Id. at 870-71.  The appellate court explained that liability for IIED "does not extend to mere insults, indignities, threats, or false accusations." Id. at 870.  The court concluded that, although reprehensible, "the conduct Williams complained of did not rise to the level that may be reasonably regarded as so extreme and outrageous so as to permit him to recover in an action for intentional infliction of emotional distress."  Id.  Similarly, the First District Court of Appeal has held that "vicious verbal attacks" that included the use of humiliating language and racial epithets did not reach the level of outrageousness required for an IIED claim.  Lay v. Roux Labs., Inc., 379 So. 2d 451, 452 (Fla. 1st Dist. Ct. App. 1980) (per curiam).  As this Court later noted, Lay involved "extremely reprehensible, racially hostile misconduct," yet that conduct failed to meet Florida's outrageousness requirement.  Vance v. S. Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (internal quotation marks omitted).

If the conduct alleged in Williams and Lay was insufficient to state an IIED claim, then we are hard-pressed to see how Lopez's claim could succeed under Florida law.  Winn was rude to Lopez, but the words she used were not in and of themselves offensive -- Winn used no racial epithets or obscenities.  As unacceptable as it was, the verbal abuse suffered by Lopez is of a different order

15

than that suffered by Williams. Likewise, the public humiliation suffered by Lopez does not rise to the level of humiliation that Williams must have felt when repeatedly referred to in racially vulgar terms in front of his coworkers. See Williams, 877 So. 2d at 870.[5] As tempted as we might be to characterize Winn's conduct as "outrageous" under the Restatement (Second) of Torts definition, we are Erie bound to apply Florida's law as construed by its courts to a claim arising under Florida law.

Another Florida case illustrates the extreme level of verbal abuse necessary to state an IIED claim under Florida law. In Nims v. Harrison, 768 So. 2d 1198 (Fla. 1st. Dist. Ct. App. 2000), the First District Court of Appeal found that the

---

[5] Lopez argues, nevertheless, that Florida's standard for outrageousness is higher for IIED claims in the employment context, making it improper to rely on such cases to dismiss his claim. We are unpersuaded. Florida IIED cases do not support the conclusion that a different outrageousness standard applies outside of the employment context. In fact, Williams suggests quite the opposite. To explain why Williams' IIED claim against his employer was insufficient, the court contrasted his allegations to the conduct alleged in Nims v. Harrison, 768 So. 2d 1198 (Fla. 1st. Dist. Ct. App. 2000), a non-employment case. Williams, 877 So. 2d at 870. The court's use of a non-employment case as a comparator strongly suggests that in Florida's courts the outrageousness standard is the same in both contexts.

In support of his argument that a lower outrageousness standard applies to non-employment cases, Lopez relies primarily on two cases: McAlpin v. Sokolay, 596 So. 2d 1266 (Fla. 5th Dist. Ct. App. 1992), and Dominguez v. Equitable Life Assurance Soc'y of the U.S., 438 So. 2d 58 (Fla. 3d Dist. Ct. App. 1983). These cases are different from our case because each involved a defendant in a position of power over a plaintiff who was, due to the circumstances, peculiarly susceptible to emotional distress. See Restatement (Second) of Torts § 46 cmts. e, f (explaining that outrageousness may arise from the defendant's abuse of a position of power or special relationship to the plaintiff, or from the defendant's knowledge that the plaintiff is peculiarly susceptible to emotional distress); Dominguez, 438 So. 2d at 62 (relying explicitly on comments e and f to § 46 to conclude that the plaintiff's IIED claim met the outrageousness standard).

16

plaintiff could state an IIED claim based on profane and racially derogatory language that included threats to kill the plaintiff and to rape her and her children. Id. at 1199 & n.1.  Although reprehensible, Winn's alleged conduct -- verbal abuse that did not involve any obscenities, racial epithets, or threats of violence -- does not meet the extremely high standard erected by Florida's courts.

Accordingly, we are constrained under controlling law to affirm the judgment of the district court.

**AFFIRMED.**