[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11093

Non-Argument Calendar

_____

YVETTE GOMEZ,

Plaintiff-Appellant,

*versus*

CITY OF DORAL,

MAYOR JUAN CARLOS BERMUDEZ,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-20389-JLK

_____

Before JILL PRYOR, NEWSOM, BRANCH, Circuit Judges.

PER CURIAM:

Yvette Gomez is a former police officer for the City of Doral. In this action against the City and its mayor, Juan Carlos Bermudez, Gomez alleges that she experienced discrimination on the basis of sex and was also retaliated against for supporting Councilwoman Sandra Ruiz, one of Mayor Bermudez's political adversaries. Gomez raises a number of claims: (1) sex discrimination in violation of Title VII and the Florida Civil Rights Act (FCRA), (2) creation of a hostile work environment by Mayor Bermudez, (3) infringement on Gomez's First Amendment right to freedom of association, (4) infringement on her First Amendment right to free speech, and (5) intentional infliction of emotional distress. The district court dismissed Gomez's complaint in its entirety for failure to state a claim upon which relief could be granted. After careful consideration, we vacate the district court's judgment in part, affirm it in part, and remand this case for further proceedings.

I

We review a district court's dismissal for failure to state a claim de novo, accepting all well-pleaded factual allegations as true. *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). To survive a motion to dismiss, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see*

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the complaint need not make "detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up). Instead, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II

We turn first to Gomez's Title VII and FCRA claims, for which our analysis is the same. *See Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Title VII and the FCRA make it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1); *see also* Fla. Stat. § 760.10(1)(a).

Gomez claims that the City violated these laws by subjecting her, in a "male-dominated work environment," to the following forms of disparate treatment: (1) failing to give her promotions and commendations and treating her "disrespectfully and

differently" from her male coworkers, (2) refusing to accommodate her scheduling requests after the birth of her child while granting similar requests to men, (3) reprimanding her for wearing jeans on the weekend while allowing men to do the same, (4) using surveillance cameras to spy on her without doing the same to any male officers, (5) reassigning her to the midnight shift while permitting a man to work her previous day shift, (6) placing a tracker on her police car, (7) increasing the length of her shifts from ten to twelve hours to interfere with her childcare schedule, (8) refusing to pay her overtime, and (9) advising her that she should resign "before she was discriminatorily terminated." Gomez further alleges that termination would have "permanently jeopardize[d] her ability to ever work in another law enforcement agency" due to the policies of many Florida police departments. So, faced with the prospect of termination and a "working environment [that] grew incredibly hostile, discriminatorily abusive, and intolerable," Gomez claims that she "was constructively terminated and forced to resign."

The district court held that Gomez's complaint was deficient because she "failed to explain how" any other male officers referenced in her complaint were "similarly situated to her 'in all material respects.'" Doc. 17 at 3–4 (quoting *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc)). But, as Gomez argued both here and below, that wasn't a valid reason to dismiss her complaint. To be sure, one way for a plaintiff "to survive *summary judgment*" is to satisfy "the burden-shifting framework set out in

*McDonnell Douglas*," whereby the plaintiff shows "that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis*, 918 F.3d at 1220–21 (emphasis added); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *see Twombly*, 550 U.S. at 569–70. After all, "the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Swierkiewicz*, 534 U.S. at 511; *see Lewis*, 918 F.3d at 1220 n.6. And it is "incongruous" to demand that a plaintiff "plead more facts than [she] may ultimately need to prove to succeed on the merits." *Swierkiewicz*, 534 U.S. at 511–12. Thus, following Supreme Court precedent, we have held that a plaintiff's "complaint 'need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case'" to survive a motion to dismiss. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)).

Yet that's precisely what the district court required Gomez to allege. In doing so, it "did not use the *Iqbal/Twombly* plausibility standard" that our precedents—and those of the Supreme Court—demand. *Id.*; *see Swierkiewicz*, 534 U.S. at 511 (holding that, in Title VII cases, "the ordinary rules for assessing the sufficiency of a complaint apply"). Those decisions make clear that Gomez "need not prove [her] case on the pleadings." *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1386 (11th

Cir. 2010).  Hence, by faulting Gomez for failing to "ma[ke] out a prima facie case of [sex] discrimination under *McDonnell Douglas*," the district court erred as a matter of law.  *Surtain*, 789 F.3d at 1246; *see Swierkiewicz*, 534 U.S. at 508.

The pertinent question, as always, is whether Gomez's complaint "provide[s] 'enough factual matter (taken as true) to suggest' intentional [sex] discrimination."  *Davis*, 516 F.3d at 974 (quoting *Twombly*, 550 U.S. at 556).  In other words, her complaint "must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim," that her employer violated Title VII and the FCRA.  *Speaker*, 623 F.3d at 1386.  If so, she may proceed to discovery on her claims.  *See Iqbal*, 556 U.S. at 678–79.

Having set forth the appropriate standard, we decline to consider how it applies at this juncture.  Because the district court failed to conduct the proper inquiry—and because the defendants followed suit in their appellate briefing—we think it more prudent for the parties to present their arguments to the district court in the first instance.  We therefore vacate the dismissal of Gomez's Title VII and FCRA claims and remand for reconsideration under the correct standard.  *See Surtain*, 789 F.3d at 1246.[1]

---

[1] In remanding, we express no view on whether Gomez has alleged sufficient facts to support a constructive discharge theory of sex discrimination as well. Though unclear from its order, the district court's rejection of this separate, "aggravated" theory of sexual harassment, *Pa. State Police v. Suders*, 542 U.S. 129, 146 (2004), seems to have been premised on Gomez's failure to identify male comparators that were similarly situated to her in all material respects.

## III

Moving along to Gomez's hostile work environment claim—which was brought under 42 U.S.C. § 1983—she asserts that Mayor Bermudez discriminated against her on the basis of sex. This, she claims, violated her rights under the Equal Protection Clause.[2]

"To establish a hostile work environment claim under the Equal Protection Clause," a public employee "must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [her] employment.'" *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004)).

---

That is, the district court viewed such comparators as mandatory to support any theory of liability under Title VII, even at the pleading stage. As explained above, that premise was faulty. The parties may argue—and the district court may reevaluate—Gomez's constructive discharge theory on remand, using the correct plausibility standard.

[2] To the extent Gomez seeks to hold Mayor Bermudez liable in his individual capacity under Title VII, this argument fails. Our court has held "that 'relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act.'" *Martin v. Fin. Asset Mgmt. Sys.*, 959 F.3d 1048, 1051 n.2 (11th Cir. 2020) (quoting *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (per curiam)). In any event, "the analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). So, whichever statutory vehicle Gomez is attempting to use with respect to Mayor Bermudez, we would reject Gomez's theory of hostile work environment for the reasons described in text.

This unwelcome harassment, moreover, must be "based on a protected characteristic of the employee," such as the employee's sex. *Id.* (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Like the district court, we conclude that the instant complaint doesn't allege any facts from which we might plausibly infer that *the Mayor*—him being the sole defendant on this count—harassed Gomez based on her sex. Simply put, Gomez's conclusory assertion that the Mayor harassed her on this basis is insufficient to withstand a motion to dismiss. *See Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) ("A district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts." (quotation marks omitted)). In fact, Gomez's speculative theory is contradicted by the factual allegations in her complaint, which suggest that the Mayor targeted Gomez for a different reason—her support for the Mayor's political rival, Councilwoman Ruiz. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010). Absent "more by way of factual content" suggesting that the Mayor personally harassed Gomez because of her sex, we conclude that Gomez hasn't nudged this claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quotation marks omitted).

In so holding, we do not decide whether Gomez has alleged a hostile work environment more generally, or whether the City can be held responsible under Title VII for the allegedly discriminatory conduct of its employees. But in § 1983 suits, "a plaintiff

21-11093              Opinion of the Court                    9

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Again, Gomez brought her equal protection claim only against Mayor Bermudez. Her claim thus fails for the simple reason that no factual allegations reasonably imply that the Mayor harbored any sex-based animus in taking the actions that he did.

## IV

Next, we turn to Gomez's freedom of association claim. "The First Amendment protects political association as well as political expression." *Rodriguez v. City of Doral*, 863 F.3d 1343, 1349 (11th Cir. 2017) (quotation omitted). As such, the government may not take adverse action against a public employee "solely because of [her] political association or beliefs." *Id.* at 1350.

Gomez argues that she was treated improperly due to her political affiliation with Councilwoman Ruiz, and she seeks to hold the City liable for the treatment she faced. However, as the district court rightly observed, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). To impose § 1983 liability on the City, then, Gomez must show that her constitutional rights were violated by the City *itself* through some unconstitutional

policy or custom that is attributable to the City. *See id.*; *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).[3]

Gomez "has two methods by which to establish [the City's] policy:  identify either (1) an officially promulgated [City] policy or (2) an unofficial custom or practice of the [City] shown through the repeated acts of a final policymaker for the [City]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).  Lacking anything official, Gomez turns to option two, arguing that the City had a practice or custom of punishing anyone that supported Councilmember Ruiz.

We disagree.  "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and widespread practice." *McDowell*, 392 F.3d at 1290 (quotation marks omitted).  "Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1131

---

[3] In her complaint, Gomez brought the same freedom of association claim against Mayor Bermudez.  But the district court construed this claim as one brought against the Mayor in his official capacity.  Gomez doesn't dispute the district court's characterization on appeal.  As a result, we too will analyze the claim as one against the Mayor in his official capacity.  Our analysis for that claim is accordingly the same as that for Gomez's § 1983 claim against the City. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." (quotation marks omitted)).

(11th Cir. 2021).  Here, Gomez has failed to plausibly allege that Mayor Bermudez's meddling in employment-related affairs gives rise to municipal liability.  For one thing, she didn't allege that Bermudez had final policymaking authority to hire, fire, or supervise the City's police officers.  Indeed, by the City's charter, that authority is explicitly vested elsewhere—in the City Manager.  *See* Doral Municipal Charter, art. III, § 3.04 ("The [City] Manager shall . . . [b]e responsible for the hiring, supervision and removal of all City employees . . . .").  In addition, rather than suggest that Mayor Bermudez possessed the "[a]uthority to make municipal policy" in this area, *Pembaur*, 475 U.S. at 483, Gomez's complaint alleges the opposite—that Mayor Bermudez "violated" the City Charter and overstepped his authority.

It doesn't matter that the Mayor may have had significant power to act for the City in other respects.  To impose municipal liability, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under local law for making policy "in a particular area, or on a particular issue." *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997); *see Pembaur*, 475 U.S. at 481 ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."); *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638 (11th Cir. 1991) ("[N]o matter how much power an official has, no municipal liability exists if that official does not set the policy at issue." (quotation omitted)).  Only then can it be said that the rogue official is "acting on behalf of the

municipality," such that the city can be held responsible. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). That's not the case here. To hold otherwise would in essence subject the City to vicarious liability. And that we cannot do. *See Monell*, 436 U.S. at 691.

Likewise, Gomez has failed to allege that the maltreatment of officers who supported Councilwoman Ruiz amounted to a "custom" of the City—a practice "so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). In such a scenario, the "longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) (plurality op.). Yet we don't find that theory plausible either. Gomez says that several officers received adverse treatment on the job—purportedly because of their affiliation with Councilmember Ruiz. But, with the exception of Detective Rodriguez, Gomez provides no facts to support her bald and conclusory allegations. *See Iqbal*, 556 U.S. at 678. Left with a single instance of an alleged constitutional violation, Gomez hasn't stated a plausible claim against the City. Even construed in the light most favorable to Gomez, her complaint doesn't exhibit "a series of constitutional violations from which deliberate indifference can be inferred" on the part of the City's policymakers. *Craig v. Floyd County*, 643 F.3d 1306, 1311

(11th Cir. 2011) (quotation omitted); *see Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328–29 (11th Cir. 2015).

Accordingly, Gomez hasn't plausibly stated a claim that the City violated her First Amendment right to freedom of association.

## V

We now move to Gomez's First Amendment retaliation claim. Gomez believes that City officials retaliated against her for providing a sworn statement to the Florida Department of Law Enforcement (FDLE) during its investigation into the criminal activity of the local police chief and his command staff.

The Supreme Court "has made clear that public employees do not surrender" their free speech rights entirely "by reason of their employment." *Garcetti v. Cabellos*, 547 U.S. 410, 417 (2006). In particular, the First Amendment still provides some protection for a public employee who speaks (1) "as a citizen" (2) "addressing matters of public concern." *Id.*; *see Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1160 (11th Cir. 2015). If both these requirements are met, then a court is to "balance" the interests of the employee, "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *see Connick v. Myers*, 461 U.S. 138, 150 (1983).

## A

We first address whether Gomez was speaking as a citizen. As the Court in *Garcetti* explained, an employee does not speak "as a citizen" if her speech "owes its existence to [the] public employee's professional responsibilities." 547 U.S. at 421–22. In making this determination, though, the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). Speech that "simply relates to public employment or concerns information learned in the course of public employment" remains eligible for First Amendment protection. *Id.* at 239.

So it is here. Gomez's speech may have concerned information that she learned on the job. But construing the complaint in the light most favorable to Gomez, she wasn't "simply performing . . . her job duties" when she rendered a sworn statement to the FDLE. *Garcetti*, 547 U.S. at 423. After all, Gomez worked for a municipality, the City of Doral. And the FDLE is a distinct law-enforcement agency of the State of Florida, not her employer. *See* Fla Stat. §§ 20.04, 20.201. Gomez's speech also occurred at an FDLE office, rather than at work. And nothing from the face of the complaint suggests that Gomez's "ordinary job responsibilities" as a detective were implicated by this outside investigation into a public corruption scandal. *Carollo v. Boria*, 833 F.3d 1322, 1330 (11th Cir. 2016). Like any other private citizen who possessed information relevant to an investigation, it is at least plausible that

Gomez's sworn statement to the FDLE was provided as an ordinary witness—as a citizen—and not as a detective. *See Cooper v. Smith*, 89 F.3d 761, 765 (11th Cir. 1996); *Lane*, 573 U.S. at 238 ("Truthful testimony under oath by a public employee outside the scope of [her] ordinary job duties is speech as a citizen for First Amendment purposes.").

## B

On to the public-concern inquiry. "To fall within the realm of 'public concern,' an employee's speech must relate to 'any matter of political, social, or other concern to the community.'" *Alves*, 804 F.3d at 1162 (quoting *Connick*, 461 U.S. at 146). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. But the "most important factor" is the content of the speech. *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1284 (11th Cir. 2006).

Applying this test, we conclude that some—but not all—of Gomez's speech touched on a matter of public concern. *See Connick*, 461 U.S. at 149. In the context of an investigation into the "impropriety and criminal activity" of a local police chief, Gomez (1) discussed problems she had with the chief that were "administrative in nature," and (2) provided information to facilitate the criminal investigation. Only the latter speech is protected. The former is "speech that concerns internal administration" of the police department "and personal grievances," which renders it ineligible for constitutional protection. *Maples v. Martin*, 858 F.2d

1546, 1552 (11th Cir. 1988); *see Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993) (per curiam). But, to the extent Gomez recounted her "personal knowledge of information relevant to the investigation" or directed the FDLE to others who she believed had "information about alleged criminal activity involving the Chief of Police and certain members of his command staff," such speech regarded a matter of public concern. "Exposing governmental . . . misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 425; *see Lane*, 573 U.S. at 241. And "[t]here can be no doubt that corruption in a police department is an issue of public concern." *Cooper*, 89 F.3d at 765. Moreover, the "*point* of the speech in question" was to help "bring [this] wrongdoing to light." *Alves*, 804 F.3d at 1167 (quoting *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985)); *see Connick*, 461 U.S. at 148. Finally, the form and context of the speech—a sworn statement to the FDLE that could help produce criminal charges—fortify our conclusion that Gomez has plausibly alleged that she was speaking on a matter of public concern. *See Lane*, 573 U.S. at 241. As such, Gomez has successfully alleged that her speech was eligible for constitutional protection. *See, e.g.*, *Cooper*, 89 F.3d at 765 (holding that a county deputy's cooperation with a GBI investigation into corruption in the Sheriff's Department constituted speech on a matter of public concern); *Stanley v. City of Dalton*, 219 F.3d 1280, 1288–89 (11th Cir. 2000) (similar); *Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) (similar).

## C

Having concluded that Gomez's speech facilitating the criminal investigation implicates the First Amendment, two questions remain. First, has Gomez plausibly shown that her "free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities"? *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005). Second, if the balance does favor Gomez, has she plausibly alleged that the protected speech "played a substantial part in [an] adverse employment action"? *Id.* The district court did not address either question. Nor have the parties briefed these issues on appeal. Thus, we think it inappropriate to reach out and decide them ourselves. We will instead vacate the district court's opinion with respect to Gomez's First Amendment retaliation claim and allow the parties to raise these arguments—if they so choose—on remand.

## VI

Finally, we turn to Gomez's IIED claim against Mayor Bermudez. To state such a claim under Florida law, a plaintiff must allege (1) intentional or reckless conduct (2) that is outrageous and (3) causes the victim emotional distress (4) that is severe. *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018). The district court held that, as a matter of law, the allegations against Mayor Bermudez were "not sufficiently 'outrageous' to support a claim for IIED." Doc. 17 at 7.

We agree.  To show outrageousness, the plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985) (citing Restatement (Second) of Torts § 46 (1965)).  It is not enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Williams v. City of Minneola*, 575 So. 2d 683, 691 (Fla. Dist. Ct. App. 1991) (quotation omitted).  Nor will liability "extend to mere insults, indignities, threats, or false accusations." *Williams v. Worldwide Flight Servs. Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004) (per curiam); *see also Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) ("Florida courts have been reluctant to find claims for [IIED] based solely on allegations of verbal abuse." (quotation omitted)).

The conduct alleged by Gomez doesn't rise to the level of outrageousness required by Florida law.  Bermudez's actions of publicly disparaging Gomez, wrongly accusing her of reporting misconduct, and lodging a complaint that caused her to have a tracker placed on her police car may have been inappropriate.  But those actions were not "beyond all possible bounds of decency." *McCarson*, 467 So. 2d. at 279.  Indeed, Florida courts have repeatedly held that conduct far worse than that alleged here is

insufficient to maintain a claim for IIED. *See, e.g., Worldwide Flight*, 877 So. 2d at 870 (pattern of harassment at work, including (1) supervisor making racial epithets in front of plaintiff and to others over the work radio, (2) creating "false disciplinary related incidents" to justify termination, (3) falsely accusing plaintiff of theft, (4) refusing to allow plaintiff to work with other African Americans, (5) repeatedly threatening to terminate plaintiff, and (6) forcing plaintiff to work in "dangerous" conditions); *Diamond v. Rosenfeld*, 511 So. 2d 1031, 1033–36 (Fla. Dist. Ct. App. 1987) (pattern of harassment to make plaintiffs' lives "as miserable as possible," including (1) threatening to shoot their dog, (2) directing anti-Semitic remarks toward plaintiffs, (3) falsely accusing one plaintiff of attempted rape, (4) making repeated "threatening and/or harassing telephone calls" to plaintiffs, (5) cursing plaintiffs and their children, and (6) directing "prayers for the dead" against plaintiffs and their children); *see also Mundy v. S. Bell Tel. & Tel. Co.*, 676 F.2d 503, 505–06 (11th Cir. 1982) (per curiam) (collecting employment-related cases denying IIED claims).

Thus, we hold that the district court correctly dismissed Gomez's IIED claim.

★  ★  ★

For the foregoing reasons, we **VACATE** the district court's judgment with respect to Gomez's Title VII, FCRA, and First Amendment retaliation claims (Counts I, II, and VI), **AFFIRM** the dismissal of all other claims, and **REMAND** this case to the district court for further proceedings.