FARRIS, Senior Circuit Judge:
Defendants interlocutorily appeal the district court’s holding that they are not entitled to qualified immunity. We have jurisdiction pursuant to 28 U.S.C. § 1291. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (denial of qualified immunity is immediately appealable under the collateral order doctrine). We affirm.
BACKGROUND
Vista Community Programs provides social services for Walker, Chattooga, Catoosa, and Dade counties in northern Georgia. Vista is funded by the Walker County Board of Health through a contract with the Georgia Department of Human Resources. Michael Walker was hired by Vista in 1982. In 1986 he was promoted to supervise all Vista services for the developmentally disabled. He was responsible for all budgetary issues pertaining to mental retardation programs. Throughout his career he received excellent performance reviews.
Darrell Dean was in charge of overseeing Vista as the Department of Human Resources District Health Director. In 1988 he hired Robert Wesley as Vista’s Area Director *1129 and Tom Nickell as Vista’s business manager. Wesley was Walker’s superior at Vista.
During Wesley and Nickell’s tenure, Vista budget information supplied to employees became less accurate. Walker complained to Wesley and Nickell that some budget practices violated Department regulations and prevented Walker from effectively managing the budgets for which he was responsible. After Walker and others voiced these concerns, Wesley and Nickell began to withhold budget information from Vista employees.
Walker also expressed concern to Wesley that (1) the garage Vista used to service its vehicles (chosen by Wesley without receiving bids) charged exorbitant prices and was not properly fixing the vehicles, (2) Wesley had directed all employees to have their Vista vehicles cleaned at a business run by Vista employees and their relatives, and (3) employee committees, which met during work hours, conducted fund-raising in the community to raise money allegedly for Vista but instead used the money for weekend social activities.
In July 1991 Georgia’s governor directed all state agencies to submit budget reduction proposals. Walker learned that Wesley and Nickell had proposed closing Vista’s Chattooga County Service Center. Walker urged them to reconsider because he believed the proposed closure was inconsistent with the Department of Human Resources’ budget proposal request. The defendants claim that Walker also learned that there was a proposal to cut his position.
When Walker’s efforts with Wesley and Nickell failed he sought assistance from state legislators. In August 1991 high-level Vista employees Ernest Taylor, Nora Swafford, and Walker met with several state representatives and senators. They discussed Walker’s budgetary concerns and a three-page list of “possible improprieties” at Vista. When Walker had knowledge of a particular impropriety he shared that information. He was primarily concerned with budget expenditures, the car wash service, and the car repair service. Walker stated in his deposition that he never feared that Wesley’s budget proposal would cost him his job because he believed he was protected by the state merit system policies. The defendants claim that Taylor had prepared the list of improprieties and was the person primarily concerned about the improprieties, that Walker did not know about the list and was only involved to protect his job, and that the legislators already knew of these problems.
As a result of the meeting with state legislators, the Department of Human Resources began an investigation of impropriety at Vista. David Nave conducted the investigation, .assisted by Robert Schwalbe. In October, Dean (the Department of Human Resources employee who oversaw Vista) informed Vista staff that Wesley and Nickell were being dismissed, that Dean would be assuming the responsibilities of Area Director, and that Schwalbe would be assuming Nickell’s former position. Dean delegated responsibility to Schwalbe for most daily administrative activities at Vista.
In November 1991 Nave completed the investigative report. It concluded that Vista had been mismanaged, that there had been misconduct and violations of Georgia law, and that Vista administration had shown little regard for Department policy. The report included investigations of several alleged instances of nepotism and concluded that at least one was a clear violation. The investigation and report generated a great deal of media attention in northwest Georgia. Dean ultimately resigned his position at the Department of Human Resources due to the investigation and media attention.
Some Walker County Board of Health members were upset that the legislators, not the Board, had been contacted about the improprieties. The Board was also embarrassed about the negative publicity. It considered refusing to renew the county’s status as lead funding county for Vista. Members of the Board were aware that Walker was among those who had complained to the legislators.
In 1990 and 1991 Walker’s wife, Crystal Walker, served as a Vista teacher consultant. Her immediate supervisor was Amanda Boyd, Director of the Walker County Service Center. Walker was Boyd’s superior in the Vista mental retardation program. Prior to *1130 hiring Mrs. Walker, Walker and Boyd reviewed all available written policies regarding employment of relatives to ensure that it was permitted. Walker suggested that Boyd contact the personnel office regarding the issue. The Georgia Department of Human Resources Administrative Policy and Procedures Manual stated that employment of relatives, which includes spouses, is not precluded, but that relatives shall not be employed in situations in which a direct superior-subordinate relationship would exist.
Walker and Boyd concluded that Mrs. Walker could be hired, and agreed that Boyd would be wholly responsible for all supervision, terms, and conditions of her employment. Walker, Wesley, and Dean each signed Mrs. Walker’s contract.
Defendants have produced documents, which they allege were the applicable policies, that prohibit the employment of any relatives in an employee’s entire chain of command.
After the release of the investigative report, Schwalbe met with Walker and stated that a member of the Walker County Board of Health had asked Schwalbe to review the Vista contracts with Mrs. Walker. The next day Schwalbe gave Walker a notice of proposed demotion and disciplinary salary reduction. The notice charged that Walker had violated Vista conflict of interest policies by hiring his wife. It also stated that Walker was “negligent and inefficient” for directing a subordinate to obtain approval from Walker’s superior for the contract with his wife.
Walker pursued a written appeal to Dean on December 16, 1991. Dean upheld the proposed demotion and salary reduction, which amounted to almost $3,200 a year. Schwalbe and Dean each knew that Walker had been one of the employees who had spoken with the legislators. On December 19 Dean informed Walker he would be transferred to another Vista center forty miles from his home. Walker later applied for a promotion to his previous position but was denied without an interview. He subsequently abandoned his career at Vista. Defendants presented evidence that other Vista employees were disciplined for violating anti-nepotism policies.
After the meeting .with the legislators, Taylor (the Vista employee who had prepared the list of improprieties) was removed from the management team at Vista and placed under the authority of one of his subordinates. After the investigation, Swafford (the third Vista employee who met with the legislators) was removed from the management team at Vista and transferred from the office where she had worked for twelve years. No justifications were given for these actions.
Walker filed suit under 42 U.S.C. § 1983 against Schwalbe and Dean for violating his right to First Amendment speech by demoting him in retaliation for his conversation with the legislators. Defendants moved for summary judgment. The district court held that Walker had established a genuine issue of material fact that he was demoted in retaliation for his speech and that the defendants were therefore not entitled to a ruling of qualified immunity prior to trial. The defendants appeal interlocutorily.
DISCUSSION

QUALIFIED IMMUNITY

A. Standard of Review

A district court’s ruling that an official’s conduct violated clearly established law so that the official is not entitled to a ruling of qualified immunity prior to trial is reviewed de novo. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir.), cert. denied sub nom Hill v. Clifton, — U.S.-, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996).
B. Method of Review
A defendant may interlocutorily appeal a district court’s holding that he is not entitled to qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985). Where this occurs there are effectively two issues on appeal: (1) whether the district court’s holding that a genuine issue exists as to what conduct the official engaged in was correct, *1131 and (2) whether the official is entitled to qualified immunity for that conduct. The first issue is factual, the second legal. Johnson v. Jones, — U.S.-,---, 115 S.Ct. 2151, 2156-59, 132 L.Ed.2d 238 (1995).
"Where, as here, the defendants contest the district court’s legal holding, we may also consider the factual issue because it is part of the core qualified immunity analysis. Johnson v. Clifton, 74 F.3d at 1091. We do so, and “simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason.” Id.; see Cooper v. Smith, 89 F.3d 761, 762 (11th Cir.1996) (in most qualified immunity interlocutory appeals the appellate court accepts the facts that the district court assumed).
C. Genuine Issue of Material Fact as to Defendants’ Conduct
We analyze First Amendment retaliatory demotion claims under a four-part test: (1) whether the employee’s speech involves a matter of public concern, (2) whether the employee’s interest in speaking outweighs the government’s legitimate interest in efficient public service; (3) whether the speech played a substantial part in the government’s challenged employment decision, and (4) whether the government would have made the same employment decision in the absence of the protected conduct. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1563-64 (11th Cir.1995) (citing Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th Cir.1989)).
First, we examine the content, form, and context of the employee’s speech to determine whether it addresses a matter of public concern. Bryson, 888 F.2d at 1565. Viewing the evidence in the light most favorable to Walker, Walker spoke with the legislators because he was concerned with how Vista funds were being spent. “[A] core concern of the first amendment is the protection of the ‘whistle-blower’ attempting to expose government corruption.” Id. at 1566. Walker spoke at a meeting with elected public officials about improving the services Vista provides to the public. Viewing the evidence in the light most favorable to Walker, his speech was on a matter of public concern.
Second, Walker had a significant interest in speaking with the legislators in order to prevent harm to the Vista program and the community it serves. Defendants argue they have a significant interest in enforcing the anti-nepotism policy. This is beside the point. The issue is whether the government has an interest in preventing the speech. Whether the government had valid reasons for its actions is only relevant to the third part of the test. Viewing the evidence in the light most favorable to Walker, defendants have no legitimate reason for preventing Walker’s speech. The second element of the Bryson test is satisfied..
Third, an employee’s initial burden to demonstrate that a retaliatory intent was a substantial factor behind the government’s employment decision is not a heavy one. Beckwith, 58 F.3d at 1565. Walker has produced evidence that Dean had a motive to retaliate against Walker because his speech led to the investigation that led to Dean’s resignation. The investigation embarrassed members of the Walker County Board of Health. The Board asked Schwalbe to investigate Mrs. Walker’s contract. Schwalbe had a motive to retaliate because he answered to Dean and the Board.
There is a genuine issue as to which nepotism policy was in effect when Mrs. Walker was hired. Viewing the evidence in a light most favorable to Walker, he did not violate any applicable policy. Even if the broader anti-nepotism policy was in effect, Walker still received a severe penalty where it appears he did everything he could to make sure he was acting within Vista regulations. In addition, the second of the two reasons given for the demotion, that Walker was “negligent and inefficient” for having a subordinate check with a superior about the proper regulations, is illogical considering the situation. Walker may well have been attempting to make sure that there was no actual impropriety and no appearance of it, but we do not resolve questions of fact.
Finally, adverse employment actions were also taken against Taylor and Swafford, the other two Vista employees who met with the legislators. From this evidence a factfinder could reasonably conclude that the people *1132 who spoke with the legislators were punished for doing so.
Defendants have presented credible evidence that Walker only talked with the legislators out of concern for his own job and that he was only fired for violating the anti-nepotism policy. However, viewed in the light most favorable to Walker, the facts demonstrate that his speech played a substantial role in his demotion. Walker has satisfied the third element of the Bryson test.
Fourth, reasonable inferences from the same evidence, viewed in the light most favorable to Walker, show that the defendants would not have taken the same action in the absence of Walker’s protected conduct.
The district court could properly conclude that, viewed in the light most favorable to Walker, the circumstantial and direct evidence produced by Walker established that he was demoted in retaliation for his speech.
D. Qualified Immunity
Even though Walker has established a genuine issue of material fact, the defendants may be protected from liability by the doctrine of qualified immunity. Qualified immunity “protects government officials ... from liability if their conduct violates no ‘clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Lassiter v. Alabama A & M University, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).
“When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate ease. But they do need to be materially similar.” Lassiter, 28 F.3d at 1150 (quoting Adams v. St. Lucie County Sheriff's Dept., 962 F.2d 1563, 1573, 1575 (11th Cir.1992) (Edmonson, J., dissenting), approved en banc, 998 F.2d 923 (11th Cir.1993)). Qualified immunity focuses on the actual, specific details of concrete cases. Lassiter, 28 F.3d at 1149-50. Plaintiffs may not discharge their burden by referring to general rules and abstract rights. Id. at 1150. “Only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated ‘clearly established’ federal rights.” Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir.1994).
Defendants contend that the qualified immunity doctrine requires an objective analysis that does not consider a defendant’s state of mind. Therefore, defendants argue, they are entitled to qualified immunity because Walker’s violation of the anti-nepotism policy was an objectively valid reason to demote him, and the defendants’ subjective, allegedly retaliatory, intent in doing so is irrelevant. See id. at 578 (subjective motivation of officials is irrelevant to whether qualified immunity exists).
Defendants are correct that there is generally no subjective component to qualified immunity analysis and that the test is based on objective legal reasonableness. Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987); Lassiter, 28 F.3d at 1150. However, in the cases that held there should not be subjective analysis, the official’s state of mind was not an essential element of the underlying constitutional violation. Tompkins v. Vickers, 26 F.3d 603, 607-08 (5th Cir.1994). Where the official’s state of mind is an essential element of the underlying violation, the state of mind must be considered in the qualified immunity analysis or a plaintiff would almost never be able to prove that the official was not entitled to qualified immunity.
We hold, as every Circuit that has considered this issue has held, that where subjective motive or intent is a critical element of the alleged constitutional violation the intent of the government actor is relevant. See Tompkins, 26 F.3d at 608 (5th Cir.) (subjective intent must be considered in qualified immunity analysis where the official’s motive or intent is a critical element of the constitutional violation); Branch v. Tunnell, 937 F.2d 1382 (9th Cir.1991) (same); Siegert v. Gilley, 895 F.2d 797 (D.C.Cir.1990) (same), aff’d on other grounds, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Pueblo Neighborhood Health Centers v. Lo *1133 savio, 847 F.2d 642 (10th Cir.1988) (same); Poe v. Haydon, 858 F.2d 418 (6th Cir.1988); Musso v. Hourigan, 836 F.2d 736 (2d Cir. 1988) (same); see also Ratliff v. DeKalb County, 62 F.3d 338, 341 (11th Cir.1995) (subjective intent is relevant to qualified immunity analysis if discriminatory intent is a specific element of the constitutional tort).
The government official’s state of mind is a critical element in First Amendment retaliatory demotion claims. It must be considered in this case. Because Walker has established a genuine issue of material fact as to retaliation, it must be assumed at this stage that the defendants did retaliate against him for his speech.
At the time the defendants acted in 1991, clearly established law informed reasonable government officials that Walker could not be punished for his First Amendment speech. See Pickering v. Board of Education of Township High School District 205, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (criticism of Board of Education by employee for its allocation of school funds is a matter of public concern and protected by the First Amendment); Bryson, 888 F.2d at 1566 (1989) (core concern of First Amendment is protection of whistle-blower attempting to expose government corruption). The facts of these cases are materially similar to the instant case. Lassiter, 28 F.3d at 1150. The law against retaliation for exercise of First Amendment rights was clearly established.
Defendants argue that denial of qualified immunity here would be equivalent to the court’s holding that once an employee has engaged in First Amendment speech he may no longer be punished for valid reasons. This argument misses the point. An employee may still be punished for valid reasons. However, when the employee can establish a genuine issue of material fact that the true reason for the punishment was actually the speech, then the case must go to trial.
Defendants spend a substantial portion of their briefs arguing that they are entitled to qualified immunity because there is no clearly established law that a demotion for violation of an anti-nepotism policy violates a person’s rights. This argument is inapposite. Walker has established a genuine issue that he was demoted in retaliation for his speech. The qualified immunity analysis is therefore made under the assumption that he was demoted for this reason.
A reasonable Vista official could not have thought that he could retaliate against Walker for exercising his First Amendment speech rights. Further, a reasonable official could not have thought that he could retaliate against Walker for exercising his rights under the guise of the anti-nepotism policy.
AFFIRMED.