[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15770
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 18, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00227-CV-W-N

LARRY CAMP,
Dr.,
SABRINA MARTINDALE,

                                        Plaintiffs-Appellees,

versus

CORRECTIONAL MEDICAL
SERVICES, INC., et al.,
RUTH NAGLICH,
in her official and
individual capacities as
Associate Commissioner,
LAURA FERRELL,
in her official and
individual capacities as
Medical Systems Administrator,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 18, 2010)

Before TJOFLAT, CARNES and REAVLEY,[*] Circuit Judges.

PER CURIAM:

Laura Ferrell and Ruth Naglich, who work in administrative positions for the Alabama Department of Corrections, were sued in their individual capacities by a prison dentist, Dr. Larry Camp, and a dental assistant, Sabrina Martindale. Ferrell and Naglich filed a motion for summary judgment on qualified immunity grounds, which the district court granted in part and denied in part. The claims involved in this appeal are First Amendment retaliation claims brought under 42 U.S.C. § 1983 by Camp against Ferrell and Naglich, and by Martindale against Naglich. Ferrell and Naglich contend that they are entitled to qualified immunity on those claims.

We review de novo a district court's decision denying summary judgment on qualified immunity grounds. Montoute v. Carr, 114 F.3d 181, 183 (11th Cir. 1997). "In exercising our interlocutory review jurisdiction in qualified immunity cases, we are not required to make our own determination of the facts for summary judgment purposes; we have discretion to accept the district court's findings, if they are adequate." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996). In

[*] Honorable Thomas M. Reavley, United States Circuit Judge for the Fifth Circuit, sitting by designation.

the present case, we do accept the facts that are set out in the district court's opinion, and we agree with the result that the district court reached.

One aspect of the reasoning in the district court's opinion warrants clarification. On the issue of whether clearly established law put Ferrell and Naglich on notice that they were violating Camp's and Martindale's First Amendment rights, the district court summarily concluded: "There can be no serious dispute that the law prohibiting state officials from retaliating against employees who engage in protected speech is 'clearly established.'" (citing Walker v. Schwalbe, 112 F.3d 1127, 1133 (11th Cir. 1997) ("At the time the defendants acted in 1991, clearly established law informed reasonable government officials that Walker could not be punished for his First Amendment speech.").

In Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516 (2002), the Supreme Court held that earlier precedential decisions do not necessarily have to be "materially similar" to the case at hand in order to give fair warning for qualified immunity purposes. The Court explained that "officials can still be on notice that their conduct violates established law even in novel factual circumstances" as long as there is precedent that gives the officials "fair warning" that their conduct is unconstitutional. Id. Even after Hope, however, it is not enough to defeat a qualified immunity defense that under the facts of the case the

3

Pickering[1] balance tilts in favor of the plaintiff's free speech.  Instead, the balance

must tilt decidedly in favor of the plaintiff's speech in order for the defendants to

have fair and clear notice that they were violating the plaintiff's constitutional

rights.  See Cook v. Gwinnett Cnty. Sch. Dist., 414 F.3d 1313, 1320 (11th Cir.

2005) ("Thus, under the facts as found by the district court at summary judgment,

[the plaintiff's] interests in promoting safety and improving the competency,

management, and organization of district bus drivers *far outweighed* the scant

evidence that the district proffered in support of its workplace efficiency

argument. We therefore conclude that the Pickering balance *tilted conclusively* in

favor of [the plaintiff] such that the defendants had fair and clear warning that

their actions were unconstitutional.") (emphasis added).

Before the 2002 Hope decision, we recognized that when a public employee

claims that his employer has violated his First Amendment rights, it will be a rare

case in which the Pickering balance will tilt so obviously in the plaintiff's favor

---

[1] See Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, 391 U.S. 563, 88 S. Ct. 1731 (1968).  "In Pickering, the landmark case concerning a public employee's [F]irst [A]mendment rights, the Supreme Court held that a public employee's interests are limited by the state's need to preserve efficient governmental functions." Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989).  "We must consider several factors in balancing the state's interest in efficient provision of public services against [a plaintiff's] speech interest, including: (1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." Id. at 1567.

that a defendant will lose the shield of qualified immunity.  See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1487 (11th Cir. 1992) ("[I]n free-speech cases, because no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where the balancing test from Pickering (free-speech interest of employee must be weighed against employer's interest in performing public services efficiently), would lead to the inevitable conclusion that the retaliatory action was unlawful." (citation, quotation marks, and alterations omitted)); see also Chesser v. Sparks, 248 F.3d 1117, 1124 (11th Cir. 2001) (same); Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1298 (11th Cir. 2000) ("Because Pickering requires a balancing of competing interests on a case-by-case basis, our decisions tilt strongly in favor of immunity by recognizing that only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated clearly established federal rights.") (quoting Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994) (alteration and quotation marks omitted)).  The Hope decision has changed that formula somewhat, but not as much as the statement in the district court's order (quoted, ironically enough, from our own pre-Hope decision in Walker) might indicate.   The problem with the statement from the Walker decision is that it conflates the Pickering merits

5

issue with the clearly established law issue that governs the qualified immunity

defense. Even after the Hope decision, there will be cases in which retaliation for

speech violates the First Amendment rights of the plaintiff but qualified immunity

protects the defendants from a monetary judgment against them. There is a

difference between the Pickering balance merely tilting in favor of the plaintiff

and it tilting conclusively in his favor; it is the difference between the interests

furthered by the plaintiff's speech merely outweighing the defendant's interests in

restricting it and his interests far outweighing them.

If a case with analogous facts is needed, the Akins case is close enough.

See Akins v. Fulton Cnty., Ga., 420 F.3d 1293, 1308 (11th Cir. 2005). There the

plaintiffs were three public employees; two of them worked for the county

purchasing department as contracting officers; the third was their immediate

supervisor. Id. at 1298. The three of them complained about bidding irregularities

to the county commissioner. Id. They alleged that after they spoke out about

those bidding irregularities, their boss, who was the director of the county

purchasing department, retaliated against them in violation of their First

Amendment rights. See id. at 1298–99. We held in Akins not only that a

reasonable factfinder could conclude that the director had violated the two

contracting officers' First Amendment rights, id. at 1301, 1305, but also that the

6

result of the <u>Pickering</u> balancing was clear and predictable enough to defeat a motion for summary judgment based on qualified immunity. <u>Id.</u> at 1308. The same is true here.

The plaintiffs in the present case did not report bidding irregularities, but they did formally complain about Dr. West's alleged misconduct to the State Board of Dental Examiners, a neutral third party charged with overseeing the licensing and practice of dentists in Alabama. <u>See</u> Ala. Code § 34-9-2 ("The Legislature hereby declares that the practice of dentistry affects the public health, safety, and welfare and should be subject to regulation. It is further declared to be a matter of public interest and concern that the dental profession merit and receive the confidence of the public and that only qualified dentists be permitted to practice dentistry in the State of Alabama. All provisions of this chapter relating to the practice of dentistry and dental hygiene shall be liberally construed to carry out these objects and purposes.") The Dental Board has the authority to discipline a dentist who "[w]illfully or negligently violates the rules of the State Department of Health or of the board regarding sanitation." <u>Id.</u> § 34-9-18(a)(8). The Board exercised that authority when it sanctioned Dr. West for the misconduct that the plaintiffs reported. A factfinder could reasonably find from the evidence that Camp and Martindale were acting as whistleblowers by reporting unsanitary,

dangerous, and brutal dentistry practices to the Dental Board.[2]

The important public interests furthered by the plaintiffs' reports far outweigh any interests the defendants had in taking the action they did against the plaintiffs, and the Pickering balance tilts "conclusively in favor of [the plaintiffs] such that the defendants had fair and clear warning that their actions were unconstitutional." Cook, 414 F.3d at 1320. The manner, time, and place of the plaintiffs' complaints to the Dental Board were appropriate and not unduly disruptive of the State's provision of public services. Their speech brought to the Dental Board's attention alleged violations of Board rules and CDC infection control policies that might not have been addressed had they refrained from complaining out of fear of retaliation.

---

[2] Ferrell and Naglich argue that Camp was required to report to the Dental Board as part of his professional responsibilities as a licensed dentist, so under Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951 (2006), complaining to the Board was simply part of Camp's official job duties, and his speech was not protected. See id. at 421, 126 S. Ct. at 1960 (holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). Alabama statutes may impose on Camp a general responsibility as a medical professional to report knowledge of other dentists' misconduct to the Dental Board, but his job responsibilities as an employee for PHS did not make reporting to the Dental Board part of his official duties. Cf. Trigillo v. Snyder, 547 F.3d 826, 829 (7th Cir. 2008) ("A statute or regulation can help determine the scope of an employee's duties to the extent that it creates responsibilities for that employee's specific job."). Camp's job responsibilities were to provide dental care to inmates at the Limestone and St. Clair facilities. The record does not indicate that Camp was responsible for overseeing the practices of other dentists at the prison facilities. In any event Dr. West was his supervisor, not his subordinate. As a dental assistant, Martindale was not licensed and would not be subject to the same rules of professional responsibility as Camp. See Ala. Code § 34-9-2.

We reach these conclusions even assuming that a claim involving only Camp's letter to the Commissioner, which refers to information that Martindale had shared with Camp, would not make it past the defendants' qualified immunity defense. We are deciding the clearly established law issue in this case based on the plaintiffs' complaints to the Dental Board, and we do not decide if we would reach the same result if the plaintiffs had complained only to the Commissioner.

**AFFIRMED.**