[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11512
_____

D.C. Docket No. 1:14-cv-23980-UU

JOE CAROLLO,

Plaintiff -Appellee,

versus

LUIGI BORIA, et al.,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 17, 2016)

Before MARCUS and FAY, Circuit Judges, and FRIEDMAN,[*] District Judge.

FRIEDMAN, District Judge:

_____

[*] The Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

Defendant-appellants Luigi Boria, Sandra Ruiz, and Christine Fraga (collectively "appellants"), all city officials, terminated plaintiff-appellee Joe Carollo from his position as City Manager for the City of Doral after he reported to law enforcement and other agencies appellants' alleged misconduct and made public disclosures about the same.  Carollo brought this civil action against appellants under 42 U.S.C. § 1983, alleging a violation of his First Amendment rights.  The district court denied appellants' motion to dismiss on the basis of qualified immunity, finding that the First Amendment protected Carollo's speech because he made the reports to law enforcement and other agencies as well as the public disclosures in his capacity as a citizen and not in connection with his ordinary job responsibilities as City Manager.  The district court also found that precedent existing at the time of his termination clearly established Carollo's First Amendment rights.

After careful review, we affirm the district court in part and reverse it in part.  We remand with instructions to grant Carollo leave to amend his complaint to cure the defects we identify and then to proceed to discovery.

## I.  BACKGROUND

In early 2013, City of Doral Mayor Luigi Boria proposed and the City of Doral City Council approved the appointment of Joe Carollo as City Manager. Appellants Boria, Christine Fraga (the City of Doral Vice-Mayor), and Sandra

2

Ruiz (a City of Doral Councilwoman) were each voting members of the City Council. Section 3.03 of the City of Doral Municipal Charter includes the following job responsibilities of the City Manager:

> (2) Direct and supervise the administration of all departments and offices but not City boards or agencies . . . ; (3) Attend all Council meetings and have the right to take part in discussion but not the right to vote; (4) Ensure that all laws, provisions of this Charter and acts of the Council, subject to enforcement and/or administration by him/her or by officers subject to his/her direction and supervision, are faithfully executed[.]

Section 3.01 generally describes the City Manager as "the chief administrative officer of the City" who is "responsible to the [City] Council for the administration of all City affairs."

During his tenure as City Manager, Carollo "reported to local and federal agencies violations of state and [f]ederal law" by the appellants "that were personally communicated to him," and "made public disclosures" at City Council meetings about those violations.[1] Carollo's reports to these agencies and his public disclosures concerned mainly three categories of alleged misconduct: (1) Boria and Ruiz's violations of Florida's campaign finance laws; (2) Boria and Fraga's violations of Florida's financial disclosure laws for elected officials; and (3) Boria's corruption.

---

[1] The entities to which Carollo reported alleged violations were the Miami-Dade County Commission on Ethics and Public Trust, the Miami-Dade Police Department's Public Corruption Unit, the Doral Police Department, and the Federal Bureau of Investigation.

Carollo reported these three allegations of misconduct to law enforcement and other agencies, as well as publicly disclosed the allegations at City Council meetings.  The first allegation was that Boria and Ruiz violated Florida campaign finance laws when Boria accepted illegal campaign contributions in the form of unreported, drastically under-market rent for his campaign headquarters, and Ruiz failed to report a political action committee's spending on behalf of her campaign. The second allegation was that Boria and Fraga failed to list their secondary sources of income on Florida's "Form 6" financial disclosures for public officials in 2011 and 2012.  The third and final allegation was that Boria engaged in various forms of corruption such as, for example, refusing to recuse himself from a City Council zoning vote on a residential development project in which the developers were his two children and "a long time business associate of Boria with whom Boria has a debtor-creditor relationship."  On Carollo's allegation, Boria sought to advantage this project by pressuring the City of Doral Director of Zoning and Planning to drop his support for a competing residential development project and making burdensome demands upon the developer of the competing project.[2]

On April 23, 2014, the City Council voted to terminate Carollo as City Manager with appellants providing the only three votes in favor of termination.

---

[2] In addition to these allegations of corruption, which involve interference with city zoning decisions and self-dealing, Carollo also alleges that Boria engaged in corruption because he interfered with city contract decisions, filed false police reports against Carollo, used public money inappropriately, and violated the City's cone of silence law.

On October 24, 2014, Carollo filed a complaint in the United States District Court for the Southern District of Florida against appellants and the City of Doral, alleging three claims:  (1) retaliation in violation of the First Amendment; (2) violations of Florida's Whistle-blower's Act, FLA. STAT. ANN. § 112.3187 et seq.; and (3) violations of the City of Doral Municipal Charter.[3]  Carollo attached the Municipal Charter as an exhibit to his complaint and pled that the First Amendment protects each of his reports and public disclosures.  As relevant here, appellants moved to dismiss the First Amendment retaliation claim on the basis of qualified immunity.  They argued that they did not violate Carollo's First Amendment rights because he made his reports and public disclosures in his capacity as City Manager and not as a citizen, and that, even if that was not the case, those First Amendments rights were not clearly established in this Circuit at the time appellants voted to terminate Carollo as City Manager.

The district court denied appellants' motion to dismiss.  First, it held that Carollo spoke as a citizen and not pursuant to his official duties, and that his complaint therefore stated a plausible First Amendment retaliation claim.  The court based that conclusion on the fact that Carollo's ordinary job responsibilities as enumerated in the Municipal Charter did not include enforcing Florida's campaign finance laws, Florida's financial disclosure laws for elected officials, or

---

[3]  Carollo later agreed to dismiss the individual defendants from the Whistle-blower's Act claim, leaving only the City of Doral as a defendant for that claim.

laws relating to public corruption. The district court also rejected appellants'

reliance on Section 3.03(4) of the Municipal Charter — which empowers the City

Manager to "[e]nsure that all laws . . . are faithfully executed" — because that

provision limits the City Manager's duties to "all laws" that are "subject to

enforcement and/or administration by" him. Second, the district court held that

Carollo's First Amendment rights were clearly established at the time appellants

voted to terminate him because appellants "have been on notice" since the

Supreme Court's decision in Pickering v. Bd. of Ed. of Township High School

Dist., 205, 391 U.S. 563 (1968), "that a public employee may be protected under

the First Amendment when the employee learns of matters of public concern

through his or her employment and the employee speaks out as a citizen on those

matters." The district court also noted that the Supreme Court's decision in

Garcetti v. Ceballos, 547 U.S. 410 (2006), reaffirmed Pickering.

Appellants filed this interlocutory appeal from the district court's denial of

qualified immunity, challenging both its merits determination that Carollo's

complaint stated a plausible First Amendment retaliation claim and its immunity

determination that precedent in this Circuit at the time of the alleged violation

"clearly established" Carollo's First Amendment rights.

## II. DISCUSSION

Our jurisdiction is limited to appeals from "final decisions" of the district

6

court, 28 U.S.C. § 1291, and a district court's denial of a motion to dismiss ordinarily is not a "final decision[]." See In re Hubbard, 803 F.3d 1298, 1305 (11th Cir. 2015). But there exists a "small class of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1355 (11th Cir. 2014) (citing Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106 (2009)). The Supreme Court "has been careful to say that a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291." Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009). We thus have jurisdiction to review appellants' interlocutory appeal.

"We review de novo a district court's denial of qualified immunity. The determination of whether a complaint sufficiently alleges a constitutional violation also is a matter of law reviewed de novo. In reviewing a complaint, we accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the plaintiff." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).

"In order to receive qualified immunity, the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991)). There is no dispute here that appellants acted within the scope of their

7

discretionary authority when they voted to terminate Carollo from his position as City Manager.

"After the defendant has established that he was acting in a discretionary capacity, 'the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'" Brooks v. Warden, 800 F.3d 1295, 1306 (11th Cir. 2015) (quoting Lee, 284 F.3d at 1194). To meet this burden, a plaintiff must establish that (1) his complaint pleads a plausible claim that the defendant violated his federal rights (the "merits" prong), and that (2) precedent in this Circuit at the time of the alleged violation "clearly established" those rights (the "immunity" prong). See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 234-35 (2009); see also Brooks, 800 F.3d at 1306.

We are free to address the merits or the immunity prong of the qualified immunity analysis in any order, see Pearson, 555 U.S. at 236, and choose to begin with the merits here in order to clarify the First Amendment rights of public employees.

### A.  Merits of Carollo's First Amendment Claim

Rule 8(a)(2) of the Federal Rules of Civil Procedure demands that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 12(b)(6) allows a defendant to move to

dismiss the complaint if it "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Bowen v. Warden Baldwin State Prison, --- F.3d ----, 2016 WL 3435501, at *4 (11th Cir. June 22, 2016) (quoting Iqbal, 556 U.S. at 678); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "It is established law in this circuit that 'the Twombly-Iqbal plausibility standard" applies equally to '[p]leadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense.'" Bowen, --- F.3d ----, 2016 WL 3435501, at *4 (quoting Randall v. Scott, 610 F.3d 701, 707 n.2, 709 (11th Cir. 2010)); see also Hoefling v. City of Miami, 811 F.3d 1271, 1276 (11th Cir. 2016). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679; see also Adinolfe v. United Techs. Corp., 768 F.3d 1161, 1175-76 (11th Cir. 2014).

Here, Carollo's claim is that appellants voted to terminate his employment as City Manager in retaliation for him exercising his federal constitutional rights under the First Amendment. The Supreme Court in Garcetti v. Ceballos, 547 U.S. 410 (2006), explained that its decision in Pickering "identif[ies] two inquiries to guide interpretation of the constitutional protections accorded to public employee

9

speech":

> The first requires determining whether the employee spoke as a citizen on a matter of public concern.  If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.  If the answer is yes, then the possibility of a First Amendment claim arises.  The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

Garcetti, 547 U.S. at 418 (internal citations omitted).  Our focus in this interlocutory appeal is entirely on the first inquiry because appellants acknowledge that Carollo spoke on a matter of public concern and do not argue that they had an adequate justification for terminating him other than his speech.  They dispute only whether Carollo spoke "as a citizen" when he made the reports and disclosures identified in the complaint.  Whether a public employee spoke as a citizen is a "question[] of law for the court to resolve."  Alves v. Bd. of Regents of the Univ. Sys. of Ga., 804 F.3d 1149, 1159 (11th Cir. 2015).

The Supreme Court in Garcetti explained that the line between speaking as a citizen or as a public employee turns on whether the speech "owes its existence to a public employee's professional responsibilities."  547 U.S. at 421-22.  If the speech does, then "[r]estricting [it] . . . does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created."  Id.; see also Boyce v. Andrew, 510 F.3d 1333, 1342-43 (11th Cir. 2007) (collecting cases

10

"[f]ollowing Garcetti" in which we interpreted the phrase "owes its existence to").

In Lane v. Franks, 134 S. Ct. 2369 (2014), the Supreme Court clarified what it

meant in Garcetti when it used the phrase "owes its existence to":

> [T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee — rather than citizen — speech.  The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties . . . .

Id. at 2379.[4]  We subsequently explained that "[a]fter Lane," Garcetti's phrase

"owes its existence to . . . must be read narrowly to encompass speech that an

employee made in accordance with or in furtherance of the ordinary

responsibilities of her employment, not merely speech that concerns the ordinary

responsibilities of her employment."  Alves, 804 F.3d at 1162.

### 1. Reports About Violations of Florida's Campaign Finance Laws

Appellants do not argue that it was one of Carollo's ordinary job

responsibilities as City Manager to ensure that other public officials complied with

Florida's campaign finance laws.  Their only argument with respect to Carollo's

statements concerning Florida's campaign finance laws is that all of Carollo's

---

[4] The fact that the Supreme Court's decision in Lane post-dates appellants' decision to terminate Carollo does not foreclose us from applying it to the merits prong of our qualified immunity analysis because, like any motion to dismiss under Rule 12(b)(6), we assess the facial plausibility of Carollo's claims under current precedent.  See Pearson, 555 U.S. at 232 ("[A] court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right.").

allegedly protected speech "fall[s] squarely within" the scope of the City

Manager's duty in Section 3.03(4) of the Municipal Charter to "[e]nsure that all

laws . . . subject to enforcement and/or administration by him/her . . . are faithfully

executed[.]"  But this language begs the question of which laws are "subject to

enforcement and/or administration" by the City Manager.  The Municipal Charter

elsewhere describes the City Manager as "responsible to the [City] Council for the

administration of all City affairs."  But the scope of those affairs is a mystery.

It is not appropriate at the motion to dismiss stage for us to interpret the

Municipal Charter's ambiguous job description for the City Manager.  See

Garcetti, 547 U.S. at 424-25 ("The proper inquiry is a practical one" wherein

"[f]ormal job descriptions often bear little resemblance to the duties an employee

actually is expected to perform.").  Discovery will illuminate exactly which laws

Carollo had the responsibility to enforce or administer and, in fact, enforced or

administered in the ordinary course of his job responsibilities.  Nonetheless, with

respect to the only question before us under Rules 8(a) and 12(b)(6) — whether,

taking the factual allegations in the complaint as true, the complaint states a claim

— we find it plausible under Iqbal and Twombly that Carollo spoke as a citizen

and not pursuant to his ordinary job duties as City Manager when he made

statements to law enforcement and other agencies about how Boria and Ruiz

violated Florida's campaign finance laws.  "[A]t this stage and on the pleadings

12

alone, [appellants] are not entitled to the protections of qualified immunity" on this claim.  Bowen, --- F.3d ----, 2016 WL 3435501, at *9.

Carollo's status as a supervising public official does not alter our conclusion that he has plausibly alleged that he spoke as a citizen about violations of Florida's campaign finance laws.  In Moss v. City of Pembroke Pines, 782 F.3d 613 (11th Cir. 2015), we expressed a reluctance to conclude that "a high-ranking employee" who has "broad administrative responsibilities" could speak as a citizen and not pursuant to those responsibilities.  See id. at 620.  The plaintiff in that case was an Assistant Fire Chief whom we concluded spoke pursuant to his ordinary job responsibilities because he testified at trial about his "self-described duties," including a statement that his supervisory position "gave his statements legitimacy."  Id. at 620 & n.1.  We read Moss, like Garcetti, to stand for the proposition that a supervising public official's ordinary job responsibilities often extend beyond what is written in a formal job description.  Id. at 618-19.  Appellants, however, offer no plausible argument that Carollo's broad administrative responsibilities included enforcing Florida's campaign finance laws, nor could they in the absence of discovery that better reveals Carollo's ordinary job responsibilities as City Manager.

Finally, appellants advance two arguments that Lane expressly rejected: (1) Carollo bore the "implied duty of public employees to report suspected

13

misconduct," rendering all of his speech a part of his ordinary job responsibilities as City Manager; and (2) Carollo's reports to law enforcement and other agencies were necessarily pursuant to his ordinary job responsibilities as City Manager because law enforcement "would [not] contact an ordinary citizen." Taking these arguments in turn, the Supreme Court in <u>Lane</u> considered and rejected an "implied duty" as follows:

> It would be antithetical to our jurisprudence to conclude that the very kind of speech necessary to prosecute corruption by public officials — speech by public employees regarding information learned through their employment — may never form the basis for a First Amendment retaliation claim. Such a rule would place public employees who witness corruption in an impossible position[.]

134 S. Ct. at 2380. We agree that appellants' suggested implied duty would eviscerate the role of the First Amendment in protecting public employees who act as whistleblowers and therefore disavow it here. The Supreme Court also explained in <u>Lane</u> that the "mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee — rather than citizen — speech." <u>Id</u>. at 2379. Our focus is on whether Carollo as City Manager ordinarily made reports to law enforcement and other agencies about violations of Florida's campaign finance laws, not whether an "ordinary citizen" could make those reports.

It is plain that Carollo's ordinary job duties as City Manager did not include anything to do with enforcing Florida's campaign finance laws – such matters as

14

how Boria and Ruiz ran and financed their campaigns.  We therefore conclude that Carollo has pled a plausible First Amendment claim under Iqbal and Twombly that he spoke as a citizen and not pursuant to his ordinary job duties as City Manager when he made reports to law enforcement and other agencies about Boria and Ruiz's violations of Florida's campaign finance laws.

## 2.  All of Carollo's Remaining Speech

As to Carollo's other claims, we conclude that Carollo's poorly-drafted complaint does not state plausible claims that he spoke as a citizen and not pursuant to ordinary job responsibilities when he made (1) reports to law enforcement and other agencies about Boria and Fraga's violations of Florida's financial disclosure laws for elected officials; (2) reports to law enforcement and other agencies about Boria's corruption; and (3) public disclosures at City Council meetings.  We will remand the case to the district court with instructions that it permit Carollo to amend his complaint in order to attempt to cure the defects that we identify.  The case should then proceed to discovery, after which appellants may again raise qualified immunity on a motion for summary judgment, if appropriate.  See Bowen, --- F.3d ----, 2016 WL 3435501, at *9 ("This case may look very different as it moves beyond the pleadings and the record is developed more fully [and] . . . 'defendants [are] not precluded from asserting the qualified

immunity defense throughout the proceedings as the facts develop[.]'" (quoting Oladeinde v. City of Birmingham, 230 F.3d 1275, 1289 (11th Cir. 2000))).

With respect to the first two categories, the Municipal Charter offers no guidance about whether the City Manager ordinarily makes reports to law enforcement and other agencies. Unlike Florida's campaign finance laws, we find it plausible that at least some of Boria's alleged corruption, such as interfering with City zoning matters, is within the scope of the City Manager's ordinary job responsibilities. Cf. Adler v. Deegan, 167 N.E. 705, 711 (N.Y. 1929) (Cardozo, C.J., concurring) ("A zoning resolution in many of its features is distinctively a city affair, a concern of the locality, affecting, as it does, the density of population, the growth of city life, and the course of city values."). And at this stage we have no basis on which to determine whether the City Manager ordinarily deals with Florida's financial disclosure laws for public officials. Are they or are they not the kind of laws that are "subject to enforcement and/or administration" by him or by others subject to his direction or supervision? We simply do not know, and Carollo's complaint does not tell us, for example, whether Carollo did or did not ordinarily involve himself in zoning or financial disclosure issues as City Manager. Carollo therefore has not pled a plausible claim that the First Amendment protects either (1) his reports to law enforcement and other agencies about Boria and Fraga's alleged violations of Florida's financial disclosure laws for public officials,

16

or (2) his reports to law enforcement and other agencies about Boria's alleged corruption.

As for Carollo's public statements at City Council meetings that publicly disclosed the alleged misconduct, section 3.03(3) of the Municipal Charter empowers the City Manager to "[a]ttend all Council meetings and have the right to take part in discussion." It is unclear from the complaint, however, whether it was part of Carollo's ordinary responsibilities to speak at City Council meetings about matters such as violations of Florida's campaign finance laws, Florida's financial disclosure laws, or political corruption. In light of the plain language of Section 3.03(3) of the Municipal Charter, we find it implausible that Carollo was speaking as a citizen when he made public disclosures concerning those matters at City Council meetings, and Carollo does not assert that he was. Carollo therefore has not pled a plausible claim that the First Amendment protects his public disclosures at City Council meetings.

Nonetheless, we will remand the case to the district court with instructions for it to allow Carollo to amend his complaint to add allegations based on any facts or evidence that might make some or all of these claims plausible. A district court should freely give leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2); see Perez v. Wells Fargo N.A., 774 F.3d 1329, 1340 (11th Cir. 2014). Here, the district court set a "[c]ut-off date for adding parties or amended

17

pleadings" of May 8, 2015, but stayed the proceedings before the cut-off date until the resolution of this appeal. Under these circumstances, we believe that justice requires giving Carollo an opportunity to file an amended complaint that resurrects those portions of his complaint that we dismiss by pleading facts that support the claim — if true — that he spoke as a citizen and not pursuant to his ordinary job responsibilities.

The district court should then proceed directly to discovery, which will reveal, among other things, what precisely were Carollo's ordinary job responsibilities. Indeed, each of the relevant cases from the Supreme Court and this Circuit to undertake Garcetti's "practical inquiry" concerning whether a plaintiff spoke pursuant to ordinary job responsibilities or as a citizen did so at the summary judgment stage or later in the life of the case. See, e.g., Lane, 134 S. Ct. at 2379-80 (summary judgment); Garcetti, 547 U.S. at 424-25 (summary judgment); Alves, 804 F.3d at 1158 (summary judgment); Moss, 782 F.3d at 620 (judgment as a matter of law); D'Angelo v. Sch. Bd. of Polk Cty., Fla., 497 F.3d 1203, 1210 (11th Cir. 2007) (judgment as a matter of law); Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007) (judgment as a matter of law); Boyce, 510 F.3d at 1343-47 (summary judgment); Phillips v. City of Dawsonville, 499 F.3d 1239, 1241 (11th Cir. 2007) (summary judgment). Development of the record through discovery will illuminate exactly what laws are "subject to enforcement and/or

18

administration by" the City Manager and whether Carollo ordinarily made reports to law enforcement and other agencies like those at issue here.

### B.  Whether Carollo's First Amendment Rights Were Clearly Established

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  "So conceived, the object of the 'clearly established' immunity standard is not different from that of 'fair warning,'" United States v. Lanier, 520 U.S. 259, 270 (1997), and "ensure[s] that before they are subjected to suit, [public officials] are on notice their conduct is unlawful."  Saucier, 533 U.S. at 206; see also Moore v. Pederson, 806 F.3d 1036, 1046 (11th Cir. 2015) ("The touchstone of qualified immunity is notice.").  Any cases decided after April 23, 2014 — including the Supreme Court's June 19, 2014 decision in Lane — are not relevant to this analysis because they could not have provided appellants fair warning that their conduct was unconstitutional on April 23, 2014.  We therefore decline to consider the many cases decided after Lane to which appellants direct us.

"Our Circuit uses two methods to determine whether a reasonable official would understand that his conduct violates a constitutional right." Moore, 806 F.3d at 1047. The first asks whether "binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in the state where the action is filed . . . gave [the defendant] fair warning that his treatment of [the plaintiff] was unconstitutional." Merricks v. Adkisson, 785 F.3d 553, 559 (11th Cir. 2015). The second asks whether a public official's "'conduct lies so obviously at the very core of what [federal law] prohibits that the unlawfulness of the conduct was readily apparent to [the public official], notwithstanding the lack of fact-specific case law' on point." Moore, 806 F.3d at 1047 (quoting Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011) (internal quotation marks omitted)). Our concern here is with the first method because it is not "so obvious[]" that appellants violated the First Amendment in light of the close merits question of whether Carollo spoke as a citizen or pursuant to ordinary job responsibilities. See supra § II(A).

Under the first method, we determine whether existing law provides fair warning and notice "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. Fair warning and notice do not require "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate," that is to say, there must exist

20

a "robust 'consensus of cases of persuasive authority.'" al-Kidd, 563 U.S. at 741-42 (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)); see also Keating v. City of Miami, 598 F.3d 753, 766 (11th Cir. 2010) ("There need not . . . be a prior case wherein the very action in question has previously been held unlawful." (internal quotation marks omitted)).  At the same time, the Supreme Court has "repeatedly told" courts not to define clearly established law "at a high level of generality." al-Kidd, 563 U.S. at 742; see Doe v. Braddy, 673 F.3d 1313, 1319 (11th Cir. 2012) ("[Q]ualified immunity's 'clearly established' test does not operate at a high level of generality.").  At base, "[i]f reasonable public officials could differ on the lawfulness of a defendant's actions," then the defendant did not have fair warning and notice, and "is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003).

The district court held that Carollo's First Amendment rights were clearly established at the time appellants voted to terminate him based on Pickering v. Bd. of Ed. of Township High School Dist., 205, 391 U.S. 563 (1968), and Garcetti v. Ceballos, 547 U.S. 410 (2006).  The court found that Pickering and Garcetti put appellants "on notice . . . that a public employee may be protected under the First Amendment when the employee learns of matters of public concern through his or her employment and the employee speaks out as a citizen on those matters." Appellants argue, however, that the district court erred in relying on Pickering

21

because our prior decisions applying its balancing test — i.e., whether the employer "had an adequate justification for treating the employee differently from any other member of the general public," Garcetti, 547 U.S. at 418 — often find against First Amendment protection.  See, e.g., Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994) (collecting cases).  Our decisions applying Pickering's balancing test are irrelevant, however, because here appellants do not advance an argument that they had an adequate justification for terminating Carollo, only that Carollo spoke pursuant to his official job responsibilities.  Understood in that context, we conclude that Pickering and Garcetti gave reasonable public officials fair warning that it violates the First Amendment to terminate a colleague in retaliation for speaking about matters of public concern that are outside the scope of his ordinary job responsibilities.

A robust consensus of our precedent confirms that the district court was correct to rely upon Pickering and Garcetti as a basis for fair warning to appellants. For example, in Akins v. Fulton Cty., Ga., 420 F.3d 1293 (11th Cir. 2005), we held that a defendant had "fair warning . . . that speech whose main thrust is to report bidding irregularities to a public official in a meeting requested for that purpose is protected by the First Amendment."  Id. at 1308 (internal quotation marks omitted); see also Bryson v. City of Waycross, 888 F.2d 1562, 1566-67 (11th Cir. 1989) ("[A] core concern of the first amendment is the protection of the 'whistle-

22

blower' attempting to expose government corruption."); cf. Camp v. Corr. Med. Servs., Inc., 400 F. App'x 519, 521-22 (11th Cir. 2010) (per curiam) (citing Akins for the proposition that a public employee's First Amendment right to speak to law enforcement about public corruption and misconduct was clearly established). Likewise, in Walker v. Schwalbe, 112 F.3d 1127 (11th Cir. 1997), we considered a state employee who was terminated for participating in a state investigation of his supervisor's alleged misconduct and held that, "[a]t the time the defendants acted in 1991, clearly established law informed reasonable government officials that [the plaintiff] could not be punished for his First Amendment speech."  Id. at 1133.

Against the backdrop of this Circuit's precedents and the Supreme Court's guidance in Pickering and Garcetti, we conclude that reasonable public officials would have known at the time of Carollo's termination that it violated the First Amendment to terminate a colleague for speaking about matters of public concern that are outside the scope of his ordinary job responsibilities.  Carollo has plausibly pled that at least some of his speech was about matters of public concern and outside the scope of his ordinary job responsibilities, and with respect to the remainder of his speech, we are remanding to the district court to permit Carollo to amend his poorly-drafted complaint to cure the defects that we identify.  See supra § II(A).  The district court therefore did not err in concluding that Carollo's First

Amendment right to such speech was clearly established at the time of his termination.

## III.  CONCLUSION

For the foregoing reasons, the district court's order denying appellants' motion to dismiss Carollo's First Amendment retaliation claim is AFFIRMED IN PART and REVERSED IN PART.  For those portions of Carollo's complaint where he fails to allege a plausible First Amendment claim, however, we REMAND with instructions to the district court to afford Carollo an opportunity to amend his complaint to cure the defects that we identify and then to proceed to discovery.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**